**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| SVANACO, INC., d/b/a, AMERICANEAGLE.COM, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| BARRINGTON ROSS, | ) ) ) | |
| Defendant. | ) | |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

NOW COMES Svanaco, Inc., d/b/a Americaneagle.com ("American Eagle"), by and through its attorneys, Gozdecki, Del Giudice, Americus & Brocato LLP, and for its Verified Complaint for Injunctive and other Relief against Defendant, Barrington Ross ("Ross"), states as follows:

**NATURE OF THE CASE**

1. Ross is attempting to extort money from American Eagle by falsely accusing American Eagle of race and age discrimination in its hiring. Ross, by his own admission, improperly pressured and/or manipulated the EEOC into issuing a Letter of Determination against American Eagle without any evidence or factual findings. Ross threatened to publicize the Letter of Determination in the media and to notify all of American Eagle's clients and employees in an effort to coerce American Eagle to pay him an undeserved settlement. When American Eagle did not immediately give into Ross's demands, Ross contacted at least two American Eagle customers (and threatens to contact more) falsely accusing American Eagle of race and age discrimination and making other false statements regarding American Eagle in a transparent attempt to extort a settlement out of American Eagle.

{00233884.1}

2. Ross's claims lack any basis, and American Eagle will not submit to extortion. Ross's attempt to extort a settlement rather than proceed through normal administrative and judicial processes is egregious, tortious, and well beyond the pale of acceptable litigation practice. Ross's extortionary conduct here is part of a clear pattern and practice of behavior, as Ross himself boasts on social media that he has obtained seven (7) successful EEOC results (American Eagle is aware of 3 such cases). Ross's conduct threatens American Eagle with irreparable harm to its reputation and customer relationships, and American Eagle is entitled to preliminary and permanent injunction relief against Ross, as well as damages.

## PARTIES

3. American Eagle is an Illinois corporation with its principal place of business located at 2600 South River Road, Des Plaines, Illinois. American Eagle provides website development and other IT services to customers through the nation and the world.

4. Ross is a natural person who, on information and belief, is domiciled in Charlotte, North Carolina.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because: (a) there is complete diversity between the parties, and (b) the amount in controversy exceeds $75,000.

6. American Eagle is an Illinois corporation with its principal place of business located at 2600 South River Road, Des Plaines, Illinois. American Eagle is thus a citizen of Illinois.

7. Ross is a natural person who, on information and belief, is domiciled in Charlotte, North Carolina. Ross is thus a citizen of the State of North Carolina.

8. Complete diversity therefore exists between the parties.

9. Moreover, the amount in controversy exceeds $75,000 because Ross has attempted to destroy American Eagle business relationships that generate substantially more than $75,000 in revenue per year, and Ross intends to continue to attempt to destroy American Eagle business relationships that could potentially be worth millions in revenue.

10. This Court has personal jurisdiction over Ross because Ross has, *inter alia*, purposefully targeted his tortious conduct at an Illinois business with the express goal of inflicting commercial and reputational harm on American Eagle in Illinois, and American Eagle's causes of action arise directly out of those contacts with the State of Illinois. *See e.g., Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010).

11. Venue is proper in this judicial district under 28 U.S.C. § 1391 because, *inter alia*, this judicial district is where a substantial part of the events or omissions giving rise to the claim occurred.

## BACKGROUND

**A. Ross Applies for a Position at American Eagle.**

12. American Eagle is a web developer headquartered in Des Plaines, Illinois. Its focus is on helping customers grow and achieve success in the digital space.

13. On or around April 2023, American Eagle posted a job for the position of account manager.

14. Ross applied for that position. Upon review of Ross's resume, American Eagle learned that Ross lacked the requisite experience for the position. Specifically, the position required previous experience dealing directly with clients in a customer relations environment. Ross's sole experience was in IT recruiting, and he had no experience in dealing directly with clients in a customer relations role.

15. American Eagle conducted a phone screen interview with Ross on May 1, 2023.

During that interview, American Eagle (a) confirmed Ross's lack of the requisite experience for the role, (b) learned that Ross resided in Georgia, more than 700 miles from American Eagle's headquarters (the position required in person attendance, and was not a remote work position), and (c) sought a salary twice the level typically paid to account managers. For the foregoing reasons, American Eagle determined Ross was not a good fit for the account manager role, and declined to offer him the position.

    **B. EEOC Complaint.**

16. Ross was not happy about American Eagle's decision not to hire him. On June 1, 2023, Ross sent an email accusing American Eagle of discrimination and threatening litigation if American Eagle did not hire him. A true and correct copy of that email is attached as Exhibit A hereto.

17. When American Eagle reiterated its decision not to hire him for valid, non-pretextual reasons, Ross filed a complaint with the EEOC. Ross subsequently demanded $100,000 from American Eagle in exchange for withdrawing his EEOC complaint. A true and correct copy of that email is attached hereto as Exhibit B.

18. American Eagle declined to pay Ross anything.

19. The EEOC's investigation proceeded, and American Eagle submitted a position statement and responded to all of the EEOC's requests.

20. During the investigation, on October 1, 2024, Ross sent an email to American Eagle falsely claiming the EEOC had found in his favor, and threatening to damage American Eagle's reputation with false allegations published in the Sun Times. A true and correct copy of that email is attached hereto as Exhibit I.

21. Unexpectantly, on August 7, 2025 after over two years of investigation, the

4

EEOC issued a letter of determination finding reasonable cause to believe American Eagle had committed race discrimination ("Letter of Determination"). A true and correct copy of the Letter of Determination is attached hereto as Exhibit C.

22. In the Letter of Determination, the EEOC sets forth no evidence in support of its conclusion. American Eagle flatly disputes the EEOC's Letter of Determination, and requested reconsideration of that finding and a detailed explanation of the basis of that finding on September 3, 2025.

23. In fact, it appears that several individuals within the EEOC agree with American Eagle's position. In his Facebook postings, Ross claims that one investigator tried to dismiss his case twice. Ross claims that he went over her head, including to the Chairman of the EEOC, in order to get his complaint to move forward. A true and correct copy of Ross's Facebook postings are attached hereto as Exhibit D.

24. On information and belief, the Letter of Determination was issued solely because of Ross's improper pressure on and/or manipulation of EEOC officials.

    C. **Ross Escalates his Extortion Scheme.**

25. After he received the Letter of Determination, Ross renewed and escalated his efforts to extort a settlement from American Eagle.

26. On August 21, 2025, Ross sent an email to American Eagle threatening to share the Letter of Determination with the Chicago Tribune and "ALL" of American Eagle's current clients and employees. A true and correct copy of Ross's August 21, 2025 email is attached as Exhibit E.[1]

27. On September 3, 2025, after American Eagle did not respond to his earlier letter,

---

[1] American Eagle has notified the EEOC about Ross's extortionary conduct.

Ross sent an email to Leeco Steel (one of American Eagle's customers) and Sitecore (one of American Eagle's largest partners), in a blatantly obvious attempt to extort a settlement from American Eagle. True and correct copies of those emails are attached as Exhibit F and G, respectively.

28. The emails were replete with false accusations against American Eagle. In the emails, Ross falsely stated:

 (a) American Eagle had never hired a Black account manager (American Eagle has hired Black account managers and currently has Black individuals serving in the account manager position).

 (b) American Eagle attempted to obfuscate the investigation by submitting erroneous documents (the EEOC made no such finding, and American Eagle engaged in no such conduct).

 (c) American Eagle has never hired or promoted an African-American person into management (American Eagle's Director of Programming and Creative Director, two major divisions of American Eagle, are African-American, and African Americans occupy other senior roles at American Eagle).

 (d) The EEOC confirmed Ross's race and age discrimination allegations. (The EEOC made no finding at all with respect to Ross's age discrimination allegations, and found only "reasonable cause" to believe Ross's race discrimination allegations, which is not confirmation).

29. Based on the foregoing false statements, Ross accused American Eagle of "blatant discrimination" and urged American Eagle's customers to "take these findings into consideration, with regard to your continued relationship with their company."

30. Ross's emails constituted a blatant attempt to threaten American Eagle's customer relationships in an effort to coerce a settlement payment from American Eagle.

31. At 3:54 p.m. on September 3, 2025, Ross sent American Eagle an email stating that he had begun the process of contacting American Eagle's clients and, unless American Eagle participated in conciliation with the EEOC, he would immediately file a class action

lawsuit against American Eagle. A true and correct copy of that email, with attorney communications redacted, is attached hereto as Exhibit H.

**D. Ross's Pattern and Practice of Discrimination Claims.**

32. American Eagle is not the first company Ross has targeted for a discrimination claim payout. During its investigation of Ross's conduct, American Eagle learned Ross has filed at least three claims against large companies. The cases are:

    (a)    *Ross v. Brooks Coll.*, 339 Fed. Appx. 749, 750 (9th Cir. 2009);

    (b)    *Ross v. Walmart*, Case No.: 5:21-cv-0195-SI (N.D. Cal. 2021); and

    (c)    *Ross v. Hasbro*, Case No.: 19-424-JJM-PAS (D.R.I. 2019)

33. On his Facebook page, Ross boasted of having seven wins before the EEOC. (Ex C, Facebook Postings), suggesting that additional claims and settlements exist.

34. On information and belief, extorted discrimination settlements are Ross's primary source of income.[2]

## COUNT I – DEFAMATION

35. American Eagle incorporates by reference paragraphs 1 – 34 as paragraph 35 of this Count.

36. As more fully detailed in paragraphs 28 and 29, Ross has made false statements about American Eagle.

37. Ross has published these statements to third parties, including, without limitation, Leeco Steel, an American Eagle customer, and Sitecore, an American Eagle partner.

38. Ross's statements are defamatory per se as they imply a want of integrity on the part of American Eagle in discharging its duties under the law.

---

[2] Ross claims on his resume to currently work for a company called Apex Search. Apex Search, however, has a rudimentary website with no job listings currently posted.

39. Ross's statements are defamatory per quad as they actually damage American Eagle's reputation with its customers. On September 3, 2025, in response to Ross's emails, American Eagle's president, Mike Svanascini, had to have an emergency meeting with Sitecore to address Ross's false statements. On September 4, 2025, Leeco Steel mentioned Ross's claims during a weekly phone call with American Eagle.

40. Ross's statements are made with actual malice, and are part of clear pattern to extort a settlement from American Eagle for his spurious discrimination claims by threatening American Eagle's relationship with its customers.

41. American Eagle has suffered reputational damages as a result of Ross's false statements, and risks irreparable harm as a result of Ross's defamation in the form of lost business relationships, lost customer opportunities and damaged reputation.

**WHEREFORE**, American Eagle respectfully requests that this Court enter judgment in its favor and against Ross as follows:

(a) Preliminarily and permanently enjoining Ross from making defamatory statements about American Eagle;

(b) Preliminarily and permanently enjoining Ross from contacting any American Eagle customer or partner in any way regarding his disputes with American Eagle;

(c) Awarding American Eagle compensatory damages in an amount to be proven at trial;

(d) Awarding American Eagle punitive damages; and

(e) Granting such other and further relief as this Court deems necessary and appropriate.

**COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT**

42. American Eagle incorporates by reference paragraphs 1 – 34 as paragraph 42 of this Count.

8

43. American Eagle has valid contracts with its customers and partners, including, without limitation, Leeco Steel and Sitecore.

44. Ross was aware of those contracts.

45. Ross intentionally an unjustifiably attempted to, and may have successfully induced, certain customers of American Eagle to cease doing business with American Eagle.

46. Ross engaged in wrongful conduct when he attempted to interfere with American Eagle's business relationships. Specifically, Ross made a series of false claims to American Eagle's customers, and improperly pressured and/or manipulated EEOC officials to issue the Letter of Determination, as more fully set forth above.

47. American Eagle has suffered damages as a result of Ross's interference and false claims, and risks irreparable harm as a result of Ross's interference in the form of lost business relationships, lost customer opportunities and damaged reputation.

**WHEREFORE**, American Eagle respectfully requests that this Court enter judgment in its favor and against Ross as follows:

(a) Preliminarily and permanently enjoining Ross making defamatory statements about American Eagle;

(b) Preliminarily and permanently enjoining Ross from contacting any American Eagle customer or partner in any way regarding his disputes with American Eagle;

(c) Awarding American Eagle compensatory damages in an amount to be proven at trial;

(d) Awarding American Eagle punitive damages; and

(e) Granting such other and further relief as this Court deems necessary and appropriate.

**COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY**

48. American Eagle incorporates by reference paragraphs 1 – 34 as paragraph 48 of

this Count.

49. American Eagle has reasonable expectations of entering into business relationships with its potential customers.

50. Ross was aware of American Eagle's expectations.

51. Ross intentionally an unjustifiably attempted to, and may have successfully interfered, American Eagle's attempts to enter into business relationships with such potential conduct.

52. Ross engaged in wrongful conduct when he attempted to interfere with American Eagle's business expectancies. Specifically, Ross made a series of false claims regarding American Eagle's hiring practice, and improperly pressured and/or manipulated EEOC officials to issue the Letter of Determination, as more fully set forth above.

53. American Eagle has suffered damages as a result of Ross's interference and false claims, and risks irreparable harm as a result of Ross's interference in the form of lost business relationships, lost customer opportunities and damaged reputation.

**WHEREFORE**, American Eagle respectfully requests that this Court enter judgment in its favor and against Ross as follows:

   (a) Preliminarily and permanently enjoining Ross from making defamatory statements about American Eagle;

   (b) Preliminarily and permanently enjoining Ross from contacting any American Eagle customer or partner in any way regarding his disputes with American Eagle;

   (c) Awarding American Eagle compensatory damages in an amount to be proven at trial;

   (d) Awarding American Eagle punitive damages; and

   (e) Granting such other and further relief as this Court deems necessary and appropriate.

## **COUNT IV – EXTORTION**

54. American Eagle incorporates by reference paragraphs 1 – 34 as paragraph 54 of this Count.

55. The Interstate Communications Act, 18 U.S.C. § 875(d) prohibits, inter alia, any person, with the intent to extort from any person, firm, association, or corporation, any money or other thing of value, from transmitting in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee.

56. The Hobbs Act, 18 U.S.C. § 1951. prohibits, inter alia, any person from obstructing, delaying, or affecting commerce by robbery or extortion.

57. Ross has communicated threats to injure American Eagle's reputation on multiple occasions. See, Exhibits E, I and H.

58. Ross's threats constitute extortion under the Hobbs Act and common law.

59. Ross made these threats with the intent to extort a settlement agreement from American Eagle valued in excess of $100,000.

60. Ross in fact followed up on his threats, by sending extortionary statements to American Eagle's customers. See, Exhibits F and G.

61. Ross is likely to continue such extortionary behavior unless enjoined by this Court. See, Exhibit H, in which Ross states he has only *begun* to contact American Eagle's customers.

62. Ross's extortionary actions have affected interstate commerce.

63. Ross has engaged in extortion in violation of both common law and federal statutes.

64. American Eagle has been damaged by Ross's conduct.

**WHEREFORE**, American Eagle respectfully requests that this Court enter judgment in its favor and against Ross as follows:

(a) Preliminarily and permanently enjoining Ross from making defamatory statements about American Eagle;

(b) Preliminarily and permanently enjoining Ross from contacting any American Eagle customer or partner in any way regarding his disputes with American Eagle;

(c) Awarding American Eagle compensatory damages in an amount to be proven at trial;

(d) Awarding American Eagle punitive damages; and

(e) Granting such other and further relief as this Court deems necessary and appropriate.

Dated: September 4, 2025

Respectfully submitted,

SVANACO, INC., d/b/a,
AMERICANEAGLE.COM

/s/ *Steven H. Leech*
One of its Attorneys

Rick A. Del Giudice, ARDC #6190103
Steven H. Leech, ARDC #6283355
Christina E. Carriere Lutz ARDC #6297074
**Gozdecki, Del Giudice, Americus & Brocato LLP**
222 N LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 782-5010
r.delgiudice@gozdel.com
s.leech@gozdel.com
c.e.lutz@gozdel.com

13

## VERIFICATION

I declare under penalty of perjury that the foregoing statements set forth in the Verified Complaint for Injunctive and Other Relief are true and correct.

Executed on 9/4/2025

_____
Tony Svanascini
CEO, American Eagle