IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| SVANACO, INC., d/b/a, AMERICANEAGLE.COM, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 1-25-cv-10643 |
| BARRINGTON ROSS, | ) ) ) |
| Defendant. | ) ) |

**EMERGENCY MOTION FOR**
**TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**

Svanaco, Inc., d/b/a Americaneagle.com ("American Eagle"), by and through its attorneys, Gozdecki, Del Giudice, Americus & Brocato LLP, pursuant to Fed. R. Civ. Pro. 65, respectfully moves this Court, on an emergency basis, for the entry of a temporary restraining order and preliminary injunction against Defendant, Barrington Ross ("Ross"). In support of its motion, American Eagle incorporates the allegations in its Verified Complaint for Injunctive Relief and Exhibits thereto, and respectfully states as follows:

**INTRODUCTION**

Ross has launched a campaign of extortion against American Eagle which, if left unchecked by the Court, threatens American Eagle with irreparable harm for which no adequate remedy of law exists. Starting yesterday, September 3, 2025, Ross, in connection with a pending charge before the EEOC, has been making false statements to American Eagle's customers and partners to interfere with American Eagle's business relationships, seeking to improperly pressure American Eagle to settle his pending EEOC charge.

Ross is attempting to leverage a Letter of Determination issued by the EEOC (itself devoid of any evidence or factual findings and seemingly procured through improper conduct by Ross),

{00269731.1}

combined with other false and defamatory statements, to extort American Eagle into giving him an excessive settlement for his spurious claims. Ross threatened to contact American Eagle customers with his false claims, and, when American Eagle did not immediately offer to pay Ross substantial sums of money, Ross carried out his threats and contacted at least one American Eagle customer and one American Eagle partner with false and defamatory emails. Ross threatens to continue contacting American Eagle's customers with his false, tortious and defamatory communications. Ross's conduct constitutes naked extortion, defamation and tortious interference, and he seeks to compel American Eagle to settle his spurious claim by threatening to destroy American Eagle's business relationships with false statements. An injunction is warranted to force him to cease and desist from such unlawful conduct.

## STATEMENT OF FACTS

American Eagle incorporates by reference its Verified Complaint for Injunctive and other Relief as through fully set forth herein.[1]

## LEGAL STANDARDS

To obtain a temporary restraining order, American Eagle must show that: (1) it is reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and, (4) the injunction will not harm the public interest. *Int'l Profit Assocs. v. Paisola*, 461 F. Supp. 2d 672, 675 (N.D. Ill. 2006). The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions. *Id*.

---

[1] A verified complaint may be treated as an affidavit when filed in support of a motion seeking an injunction. *Students v. United States Dep't of Educ.*, 16-CV-4945, 2016 WL 6134121, at *4 (N.D. Ill. Oct. 18, 2016), *report and recommendation adopted sub nom. Students & Parents for Privacy v. United States Dep't of Educ.*, 16-CV-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017).

American Eagle has the burden of proof to make a clear showing that it is entitled to the relief it seeks. *Id*.

## ARGUMENT

I. **American Eagle is Reasonably Likely to Succeed on the Merits Given Ross's Plainly Extortionary Conduct.**

To establish a claim for defamation in Illinois, a plaintiff must establish: (1) a false statement, (2) published to a third party without privilege, and (3) that the publication caused plaintiff damages. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 698 (7th Cir. 2006). Illinois recognizes two types of defamation: defamation per se and defamation per quod. *McKay v. Town & Country Cadillac, Inc.,* 97 C 2102, 2002 WL 1611578, at *3 (N.D. Ill. July 17, 2002).

When the complainant is a corporation, a corporation must establish that defendant's writings "assail[ed] the corporation's financial position or business methods, or accuse it of fraud or mismanagement." *Am. Int'l Hosp. v. Chicago Tribune Co.*, 136 Ill. App. 3d 1019, 1024, 483 N.E.2d 965, 969 (1st Dist. 1985). The Seventh Circuit has rejected the proposition that "the standards for proof of defamation are different for corporations than for other plaintiffs," and instead has explained that "[Illinois] cases treat corporate plaintiffs just like individuals." *Kozlowski v. Greenridge Farm, Inc.*, 338 F. Supp. 3d 828, 837 (N.D. Ill. 2018), *citing Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269 (7th Cir. 1983). Illinois courts apply the rule of innocent construction to determine whether a statement constitutes defamation per se. *Audition Div., Ltd. v. Better Business Bureau, Inc.*, 120 Ill. App. 3d 254, 257 (1st Dist. 1983). Thus, statements are read as a whole and are given their natural and obvious meaning. *Id*.

To establish tortious interference under Illinois law, a plaintiff must show (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and, if defendant's

conduct is privileged, unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 637 (N.D. Ill. 2016). Similarly, to establish tortious interference with a business expectancy under Illinois law, a plaintiff must show (1) a "reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Wave 3 Learning, Inc. v. AVKO Educ. Research Found., Inc.*, 16 C 5643, 2017 WL 5891331, at *7 (N.D. Ill. Nov. 28, 2017). Illinois recognizes a civil cause of action of action for extortion and blackmail. *Kameli v. Ghanemzadeh*, 22 C 219, 2023 WL 2711672, at *3 (N.D. Ill. Mar. 30, 2023).

    **A.    Ross has made False Statements regarding American Eagle to Extort it and Interfere with Its Business Relationships.**

As set forth in the Verified Complaint, Ross has made numerous false statements to an American Eagle customer and an American Eagle partner that are clearly defamatory and incapable of innocent construction. Specifically, Ross falsely claimed (a) American Eagle had never hired a Black account manager, (b) American Eagle attempted to obfuscate an EEOC investigation by submitting erroneous documents, (c) American Eagle has never hired or promoted an African-American person into management, and (d) the EEOC confirmed Ross's race and age discrimination allegations. These statements are plainly false. (ECF 1, Compl., ¶ 28). American Eagle has in fact hired Black account managers. (*Id*.) American Eagle never attempted to obfuscate an investigation by submitting erroneous documents, and the EEOC made no such finding. (*Id*.; see also Compl. Ex. C.) American Eagle has African-Americans in two of its most senior positions, and has African-Americans in other management roles in the company. (*Id*.)

Furthermore, the EEOC did not confirm Ross's race or age discrimination allegations. (ECF 1, Compl., ¶ 28; Compl. Ex. C.)

      **B.    Ross Published These False Statements to Third Parties in an Effort to Extort American Eagle.**

Ross threatened to publish these false statements to American Eagle's customers on multiple occasions, and, ultimately did so. Ross threatened American Eagle with a newspaper article on October 1, 2024. (ECF 1, Compl. Ex. I.) On August 21, 2025, Ross again threatened to "notify ALL of your current clients, and employees of this egregious finding" (ECF 1, Compl., Ex. E, caps in the original.) On September 3, 2025, Ross did exactly that, sending emails at or about 1:43 p.m. containing the false statements to an American Eagle customer, Leeco Steel, and an American Eagle partner, Sitecore. (ECF 1, Compl., Exs. F and G.) At 3:45 p.m. on September 3, 2025, Ross sent another email to American Eagle threatening to continue contacting American Eagle's customers unless American Eagle submitted to conciliation in the EEOC, and presumably gave him the unreasonable settlement he seeks. (ECF 1, Compl., Ex. H.)

Ross's conduct is clearly intended to interfere with American Eagle's business relationships in an attempt to extort a settlement from American Eagle.

      **C.    Ross's Conduct Has Damaged American Eagle.**

Courts recognize that defamation per se is so obviously defamatory that it is unnecessary to allege or prove special damages or malice. *Management Servs. v. Health Management Sys.*, 907 F. Supp. 289, 293 (C.D. Ill. 1995); *Audition Div., Ltd. v. Better Business Bureau, Inc.*, 120 Ill. App. 3d 254, 256 (1st Dist. 1983). Defamation per se is considered so severe that serious injury to the plaintiff's reputation is "virtually certain." *Id*. Given that the injury is "virtually certain", plaintiffs do not bear the burden of proof for actual damages and instead are allowed to rely on the presumed damages doctrine. *Management Servs.*, 907 F. Supp. at 293.

Ross's statements are defamatory per se and are incapable of any innocent construction. In *Kozlowski v. Greenridge Farm, Inc.*, 338 F. Supp. 3d 828 (N.D. Ill. 2018), the Court found that Kozlowski's statements, made to Greenridge Farms' customers, that she was fired for her pregnancy could constitute defamation per se and were not capable of innocent construction. *Id*. at 839. The Court in *Kozlowski* further found that the statements were not protected opinion, as the statements were verifiable. *Id*. at 839-840. Ross's statements in the instant are even more severe than the statements in *Kozlowski*, as Ross does not merely make a false discrimination claim, but makes several objectively false statements about American Eagle's workforce and hiring history to smear American Eagle with the charge of racial discrimination, a false and defamatory charge.

  **C. Ross is Acting Deliberately and with Malicious Intent to Extort American Eagle.**

There can also be no doubt that Ross's motivations are to extort American Eagle by interfering with its business relationships. In his emails to Leeco Steel (an American Eagle customer) and Sitecore (an American Eagle partner), Ross states explicitly "I hope you will take these findings [i.e. the false and defamatory statements] into consideration, with regard to your continued relationship with their company." (ECF 1, Compl., Exs. F and G.) In his follow-up email to American Eagle, Ross clearly threatens to continue contacting American Eagle's customers, stating "As you're aware, I've *begun* the process of contacting your clients, regarding the recent EEOC investigation." (ECF 1, Compl. Ex. H, emphasis added.) He further demands that American Eagle submit the EEOC's conciliation process or further action will be taken. (*Id*.)

Ross's malice is further evidenced by his use of improper pressure tactics on the EEOC, which he boasts of in his own Facebook postings. On October 20, 2023, Mr. Ross stated on Facebook:

{00269731.1} 6

> "When dealing with the EEOC, you're not only fighting for your rights, you're also fighting the system! I've had a lot of success in litigating cases via the EEOC, but recently, a young female investigator, tried to convince me, my case didn't merit further inquiry. Despite, having ample evidence, including historical hiring data, supportive statements from previous employees of the company, confirming they had NEVER hired a black Account Manager in their entire history! **So I followed up with her supervisor, and received a note this morning, advising me that the case will continue to be investigated**. It's a shame you have to fight so hard to get bureaucrats to do their job, and many times, it's your own people!"

(ECF 1, Compl., Ex. D, emphasis added.)

On September 24, 2023, Ross posted to Facebook "Meeting with the EEOC today, **had to reach out to the Chairman, appointed by Biden to get some traction**. Never stop fighting for justice." (ECF 1, Compl., Ex. D, emphasis added.)

On August 7, 2025, the same day the EEOC issued the Letter of Determination, Ross posted three statements on Facebook:

- "This is why I don't tolerate Black MAGA and sellouts! Racism in hiring is real and directly impacts generations of black professionals. Will never understand why a black person would side with the enemies, who want to repeal our rights!"

- "The black lady at the EEOC, tried to dismiss my case twice! As a black man, seeking justice, you can't trust anyone, you just have to fight for your rights, and **keep escalating until they decide to do their job**."

- "This is the 7th time I've prevailed in a discrimination lawsuit, representing myself each time! One of the cases is often cited as precedent in the 9th Circuit."

(ECF 1, Compl., Ex. D, emphasis added.)

It is clear from his own admissions Ross used improper pressure to persuade the EEOC to issue the Letter of Determination. The Letter of Determination itself sets forth no basis for its findings, and no such basis exists for the finding that there was reasonable cause to believe American Eagle engaged in racial discrimination. Moreover, EEOC determinations are not binding, or even necessarily admissible at trial. *See e.g., Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 625 (7th Cir. 2003) (affirming a District Court's refusal to admit the EEOC

determination after it found the EEOC determinations were unreliable and untrustworthy). Ross is also a serial litigant, boasting on Facebook of prevailing seven (7) times before the EEOC. (ECF 1, Compl., Ex. D.)

Taken as a whole, Ross's conduct clearly evidences a malicious intent to extort a settlement out of American Eagle by interfering with American Eagle's business relationships by making false and defamatory statements to its customers and partners. Based on the foregoing evidence, American Eagle has shown a clear likelihood of success on the merits for its claims of defamation, tortious interference and extortion.

## II. American Eagle has No Adequate Remedy at Law.

Reputational loss has been recognized as damages that are incalculable and therefore have no adequate legal remedy. *Int'l Profit Assocs.*, 461 F. Supp. 2d at 680; *see also U-Haul Co. of Cent. Illinois v. Hindahl*, 90 Ill. App. 3d 572, 577, 413 N.E.2d 187, 191 (3d Dist. 1980) (finding lack of an adequate remedy at law because injury to plaintiff's reputation and good will, and the resulting potential loss of future business, were incapable of adequate computation). Here, American Eagle has established it suffers reputational harm with its customers and partners because of Ross's false statements. Indeed, Mike Svanascini, American Eagle's president, had to have an immediate meeting with Sitecore, one of American Eagle's largest partners, following Sitecore's receipt of Ross's defamatory email (ECF 1, Compl., ¶ 39; Compl. Ex. G.) Leeco Steel also called the following day to discuss Ross's allegations. (*Id*.) Furthermore, American Eagle has established Ross has no intention of stopping or slowing his extortionary efforts without court intervention, as proven by Ross's own statements in his email on September 3, 2025 (ECF 1, Compl. Ex. H.) Therefore, American Eagle has no adequate remedy at law absent injunctive relief.

### III. American Eagle Will Suffer Irreparable Harm if Ross's Defamatory and Extortionate Campaign Continues Unchecked.

Irreparable harm is "harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it." *United Asset Coverage, Inc. v. Avaya Inc.*, 409 F. Supp. 2d 1008, 1039 (N.D. Ill. 2006). Here, American Eagle has established that it will suffer incalculable loss of its reputation with customers and partners because of Ross's defamatory statements and extortionary campaign. This harm is not just a perceived threat of continued reputational harm, but an actual threat established by Ross's own email threatening to continue his ongoing campaign. (ECF 1, Compl. Ex H.) As set forth in Section II above, Ross's conduct is causing incalculable damage to American Eagle's reputation, which cannot be compensated by money alone.

### IV. The Injunction Will Serve, not Harm, the Public Interest.

When a plaintiff has established a likelihood of success on the merits, an inadequate remedy at law, and irreparable harm, the Court must then consider (1) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (2) the public interest, meaning the consequences of granting or denying the injunction to non-parties. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992).

Both remaining factors warrant granting an injunction here. The harm suffered by American Eagle, its loss of reputation and potential customers/partners, is ongoing and incalculable. Ross, however, will suffer no harm at all from being prohibited from continuing his efforts to extort American Eagle. Nothing in the requested injunction would preclude Ross from pursuing through proper channels any administrative and legal remedies to which he believes he

is entitled. Rather, the injunction would only prohibit him from defaming American Eagle and interfering with its business relationships, something Ross has no legal right to do.

Furthermore, the injunction would serve, not harm, the public interest. There is an unquestioned public interest in permitting grievances to be resolved through established judicial and administrative processes. Ross, however, seeks to subvert such established processes, relying on threats of reputational harm to extort a settlement from American Eagle rather than assert his claims in a proper way through proper channels. An injunction would uphold the integrity of such Congressionally established fora and would not affect the rights of any third party in any way.

Finally, the doctrine of prior restraint does not preclude injunctive relief in this case. American Eagle seeks limited relief to preclude Ross from publishing defamatory statements to a specific class of individuals, its actual and potential customers and partners. It is well established that defamation is not protected by the First Amendment. *See e.g., DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 827 (7th Cir. 1999). As the Court held in *Huskey v. Nat'l Broad. Co., Inc.*, "if the First Amendment thus offers no protection to those who publish private or defamatory matter, it goes without saying there is no prior restraint limitation as to remedy." *Huskey v. Nat'l Broad. Co., Inc.*, 632 F. Supp. 1282, 1295 (N.D. Ill. 1986); *accord Int'l Profit Associates, Inc. v. Paisola*, 461 F. Supp. 2d 672, 679 (N.D. Ill. 2006) (No violation of prior restraint doctrine when enjoining defendant from publishing certain demonstrably false and defamatory statements).

For the foregoing reasons, the public interest is served by granting injunctive relief.

## CONCLUSION

The law permits individuals who claim to be harmed by racial discrimination a right to seek redress through Congressionally established administrative agencies and the Courts of the United States. The law does not permit, however, individuals to engage in extortion through

defamatory claims and tortious interference with business relationships. Barrington Ross has chosen the latter path of extortion, and his ongoing conduct threatens American Eagle with irreparable harm for which no remedy at law would be adequate. For the reasons set forth in this Motion and in its Verified Complaint, American Eagle is entitled to a temporary restraining order and preliminary injunctive relief to stop Ross from contacting its customers and partners with false and defamatory claims. All of the relevant factors way heavily in favor of an injunction, and the Court should grant the relief requested.

**WHEREFORE**, American Eagle respectfully requests that this Court grant this Motion and enter an Order:

(a) Temporarily retaining and preliminarily enjoining Ross from publishing the defamatory statements identified in paragraph 28 of the Verified Complaint;

(b) Temporarily retaining and preliminarily enjoining Ross from contacting any American Eagle customer in any way regarding his disputes with American Eagle, including, without limitation, his pending charge with the EEOC, this litigation, and any future litigation brought related to his pending EEOC charge; and

(c) Granting such other and further relief as this Court deems necessary and appropriate.

Dated: September 4, 2025

Respectfully submitted,

SVANACO, INC., d/b/a,
AMERICANEAGLE.COM

/s/ *Steven H. Leech*
One of its Attorneys

Rick A. Del Giudice, ARDC #6190103
Steven H. Leech, ARDC #6283355
Christina E. Carriere Lutz ARDC #6297074
**Gozdecki, Del Giudice, Americus & Brocato LLP**
222 N LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 782-5010
r.delgiudice@gozdel.com
s.leech@gozdel.com
c.e.lutz@gozdel.com